IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00448-REB-CBS

BOB ALLEN CUSTARD,

      Plaintiff,

v.

ARMIJO, MR.,
ATAUVICH, MR.,
CAMACHO, MR.,
J. CEDENO, MR.,
FRANK CORDOVA, MR.,
FRANCIA, MS.,
FITZGERALD, MR.,
GACONI, MR.,
HENRY, MR.,
HEUETT, MR.,
HOLMAN, MR.,
HUDDLESTON, MR.,
KASDON, MS.,
LUNGREN, MS.,
MCMULLEN, MR.,
OSAGIE, MR.,
OWENS, MR.,
PADILLA, MR.,
RANGEL, MR.,
ROBINSON, MR.,
SANTINI, MR.,
UNKNOWN NAMED DEFENDANTS 1-14, AND
THE UNITED STATES OF AMERICA,

      Defendants.

---

## REPORT AND RECOMMENDATION

---

Magistrate Judge Craig B. Shaffer

      This civil action comes before the court on the "Motion to Dismiss" (the "Motion")

(Doc. 40) filed by the Defendants[1] on August 10, 2015.  Pursuant to the Order Referring Case

dated May 19, 2015 (Doc. 16) and the  memorandum dated August 11, 2015 (Doc. 41), this matter was

---

[1] The Motion is brought on behalf of all of the Defendants except Defendant Holman, who has apparently been neither identified nor served.

referred to the Magistrate Judge. The court has reviewed the motion, the entire case file, and the applicable law and is sufficiently advised in the premises. For the following reasons, the court recommends that the Defendants' Motion be granted in part and denied in part.

## BACKGROUND

In his Amended Complaint ("Complaint") (Doc. 8), filed on April 15, 2015, Plaintiff — a *pro se* prisoner in the custody of the Bureau of Prisons at the United States Penitentiary Administrative Maximum ("ADX") — sued 26 named Defendants and 14 unnamed Defendants. He originally asserted seven claims, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971), for violations of his Eighth Amendment rights and for unconstitutional retaliation. The extensive allegations underlying those claims, which will be described in further detail in the following analysis, also form the basis for his negligence claims against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. Plaintiff seeks reparations in the form of monetary damages and injunctive relief.

In an Order (Doc. 14), dated May 19, 2015, this court dismissed Defendants Erwin and Simpler, as well as Plaintiff's claims regarding a broken sink (Claim Five) and the Defendants' alleged refusal to provide Plaintiff with eating utensils (Claim Seven). In addition, the court dismissed Plaintiff's *Biven* claims for First Amendment retaliation. Thereafter, the Defendants filed their Motion on the basis that (1) this court lacks jurisdiction over two of the Defendants and (2) Plaintiff has failed to state a claim upon which relief can be granted. They seek to dismiss Plaintiff's FTCA claims as well as the majority of his *Bivens* claims. With two exceptions, Defendants also seek to dismiss Plaintiff's claims for injunctive relief. Plaintiff filed his Response (Doc. 52) on August 31, 2015, and Defendants filed their Reply (Doc. 53) on September 17, 2015. Plaintiff also filed what appears to be a surreply (Doc. 54) on September

25, 2015. However, the filing of surreplies is not contemplated by the Federal Rules of Civil

Procedure and, therefore, the court declines to consider this document.

## STANDARDS OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(1)

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their

jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing

*Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)).   Pursuant to Federal Rule of Civil

Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction.

The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v.*

*United States ex rel. U.S. Army, Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987).   "A

court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the

proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power &*

*Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

A motion to dismiss for a lack of subject matter jurisdiction may take two forms. *See*

*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). It may facially attack a complaint's

allegations or it may challenge the facts upon which subject matter jurisdiction depends. *Id*. at

1002-1003.

> When reviewing a factual attack on subject matter jurisdiction, a
> district court may not presume the truthfulness of the complaint's
> factual allegations. A court has wide discretion to allow affidavits,
> other documents, and a limited evidentiary hearing to resolve
> disputed jurisdictional facts under Rule 12(b)(1). In such instances,
> a court's reference to evidence outside the pleadings does not
> convert the motion to a Rule 56 motion.

*Id*. at 1003 (internal citations omitted); *see also Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5

(10th Cir. 1987). "The burden of establishing subject-matter jurisdiction is on the party asserting

jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))

**B.      Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, this court may consider exhibits attached to the Complaint without converting the motion into one for summary judgment pursuant to Rule 56. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id*. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id*. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him

or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "Nevertheless, the standard remains a liberal one, and 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" *Morgan v. Clements*, No. 12-cv-00936-REB-KMT, 2013 WL 1130624, at *1 (D. Colo. Mar. 18, 2013) (quoting *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).

The court is cognizant of the fact that Plaintiff is not an attorney; consequently, his pleadings and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by a lawyer. *See Hall*, 935 F.2d at 1110 (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id*. However, this court cannot act as a *pro se* litigant's advocate. *Id*.  It is the responsibility of the *pro se* plaintiff to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998).  This court may not "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nor may a plaintiff defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been plead. *Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459

U.S. 519, 526 (1983). *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## C.     Qualified Immunity

The Defendants have also raised the qualified immunity defense as to the various claims asserted against them. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity is "immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

In resolving a motion to dismiss based on qualified immunity, this court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. The plaintiff bears the burden of showing, with particularity, facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has the discretion to consider these prongs in any order it chooses. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

As to the first prong, "[i]f no constitutional right would have been violated were the allegations established," the inquiry is at an end. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong — whether the right was clearly established — must be considered "in light of the

specific context of the case, not as a broad general proposition." *Id*. An official's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing is violating that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

## ANALYSIS

### I.    Absolute Immunity of PHS Officers Cordova and Francia

In the Motion, Defendants Cordova and Francia argue that this court lacks jurisdiction to consider Plaintiff's claims against them because they are commissioned officers with the Public Health Service ("PHS") and, therefore, not subject to *Bivens* liability. (*See* Doc. 40 at 38-39[2]; *Declaration of Frank Cordova*, Doc. 40-2 at ¶1; *Declaration of Charlotte A. Francia*, Doc. 40-3 at ¶ 1).

Pursuant to 42 U.S.C. § 233(a), the Federal Tort Claims Act is the exclusive remedy "for damage for personal injury . . . resulting from the performance of medical [treatment] by any commissioned officer or employee of the Public Health Service." *Hui v. Castaneda*, 559 U.S. 799, 804 (2010) (quoting § 233(a)). In *Hui*, the Supreme Court recognized that the plain language of the statute preempted *Bivens* claims made by inmates for inadequate medical treatment. *Id*. at 802 ("PHS officers . . . are not personally subject to *Bivens* actions for harms arising out of" medical or related functions).

Here, Defendants Cordova and Francia have provided separate Declarations in which they attest that at the time giving rise to the allegations in the complaint, they were

---

[2] As a convention, the court cites to the electronic filing page numbers rather than the parties' page numbers.

commissioned officers with the PHS. (Doc. 40-2 at ¶1; Doc. 40-3 at ¶1). In addition, they attest that at all times relevant to this cause of action, all of their interactions with Plaintiff, and actions with regard to Plaintiff, were in performance of a medical, psychological, or related function within the course and scope of their employment. (Doc. 40-2 at ¶ 2; Doc. 40-3 at ¶2). In his Response, Plaintiff acknowledges that he cannot bring *Bivens* claims against these Defendants. (Doc. 52 at 15). Consequently, the court recommends that Defendants Cordova and Francia be dismissed from this action.

## II.     John Doe Defendants

There is no provision in the Federal Rules of Civil Procedure for naming of fictitious or anonymous parties in a lawsuit. *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984); *Coe v. U.S. Dist. Court for District of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982). To the contrary, the Federal Rules specifically provide:

> Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties . . . .

Fed. R. Civ. P. 10(a). Because anonymous parties are not permitted by the Federal Rules and Plaintiff has not identified the anonymous Defendants, the "Unknown Named Defendants 1-14" should be dismissed from the action.[3]

## III.    Eighth Amendment Claims

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A claim pursuant to the Eighth Amendment

---

[3] As discussed in the following analysis, even if they had been identified, Plaintiff has failed to state a claim against the John Doe defendants in Claims Three, Four, and Six.

includes both objective and subjective components. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component asks whether the deprivation of a basic human need is sufficiently serious. *Id*. To make out a conditions-of-confinement claim, the deprivation must be extreme. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id*. (internal citations and quotation marks omitted).

The subjective component asks whether the prison official acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298. This follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). The "deliberate indifference" subjective standard applies to claims of inhumane conditions of confinement. *Wilson*, 501 U.S. at 303-04. A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Under this standard, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

A. SHU Showers (Claim One)

In his first claim, Plaintiff alleges that in April 2014, he was placed in the ADX Special Housing Unit ("SHU"). (Doc. 8 at 7-8). He further alleges that on or about April 4, 2014, he suffered lacerations, injuries to his back, and a concussion when he fell in his cell shower. *Id*. Plaintiff attributes his fall to the fact that the shower was 12" higher than the concrete floor of his cell, which is coated with a slick enamel paint. *Id*. Plaintiff alleges that prison officials knew he would have difficulty making the transition from the shower to his cell floor because he is in his

sixties, his legs are different lengths, and he has degenerative disk disease. *Id*. Plaintiff further alleges that he specifically requested that he be provided with a shower curtain, a shower mat, and shower shoes. *Id*. at 7-8. Despite the fact that these items were provided to other SHU inmates, Plaintiff's requests were denied. *Id*. at 8.

Accepting these allegations as true, the court finds that these conditions, alone, did not constitute a substantial risk of serious harm that could support an Eighth Amendment violation. The Tenth Circuit has specifically held that "slippery floors constitute a daily risk faced by members of the public at large." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004). In *Reynolds*, the court concluded that a slippery condition arising from standing water in a prison shower was not a condition posing a substantial risk of serious harm, as required under the Eighth Amendment, even where the inmate was on crutches and had warned prison employees that he was at a heightened risk of falling. *Id*. at 1032.

Likewise, other federal courts have consistently held that wet or slippery floors do not pose an objectively excessive risk to prisoners. *See also LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("[W]e do not find that shackling a dangerous inmate in a shower creates a sufficiently unsafe condition. Even if the floors of the shower are slippery and [the plaintiff] might fall while showering, 'slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment.'") (quoting *Jackson v. Arizona*, 885 F.3d 639, 641 (9th Cir. 1989)); *Gilman v. Woodford*, No. CIV S-05-0337 FCD GGH P, 2006 WL 1049739, at *4 (E.D. Cal. Apr. 20, 2006) ("[T]he court finds that defendants are entitled to qualified immunity. A slippery floor caused by a leaky roof is a condition similar to a slippery kitchen floor caused by a leaky dishwasher or a greasy staircase. A reasonable prison official could have believed that the failure to repair the leaky roof did not violate the Eighth Amendment."); *Eley v. Kearney*, No.

Civ. 02-362-SLR, 2005 WL 1026718, at *5 (D. Del. Apr. 25, 2005) ("Plaintiff has not established that the alleged deprivation, an accumulation of water at the top of a flight of stairs, constitutes an "objectively, sufficiently serious" deprivation. The court concludes that, to the extent an accumulated slippery substance can be classified as a deprivation, it is better classified as inadvertent or negligent rather than obdurate or wanton."); *Sylla v. City of New York,* No. 04-cv-5692 (ILG), 2005 WL 3336460, at *3 (E.D.N.Y. Dec. 08, 2005) (finding that an instruction by prison officials to inmates to use a bathroom that is wet, or even flooded, "does not inherently constitute an excessively serious risk to substantiate an Eighth Amendment violation . . . ."); *Robinson v. Cuyler,* 511 F.Supp. 161, 163 (E.D. Pa. 1981) ("A slippery kitchen floor does not inflict 'cruel and unusual punishments'"). *But see Frost v. Agnos*, 152 F.3d 1124, 1127-29 (9th Cir. 1998) (stating that a disabled prisoner on crutches who had fallen many times at least stated a § 1983 claim under the Eighth Amendment for the multiple risks presented at his prison, including slippery shower floors with no safety features).

With respect to Claim One, there are no allegations that would distinguish Plaintiff's case from *Reynolds*. Numerous members of the general public, even those with physical limitations similar to Plaintiff, encounter and navigate such situations every day.[4] Plaintiff's allegations in Claim One do not establish anything "special or unique about [his] situation that will permit him to constitutionalize what is otherwise only a state-law tort claim." *Reynolds*, 370 F.3d at 1032. Consequently, the court concludes that Claim One fails to state a claim upon which relief could be granted and recommends that it be dismissed.[5]

---

[4] Furthermore, according to Plaintiff's allegations, he only fell one time, despite being housed in this cell for nearly two month. (Doc. 8 at 8, 11 (alleging he was housed in cell #209 from April 1, 2014 – April 21, 2014 and May 13, 2014 – June 13, 2014)). Thus, like the plaintiff in *Reynold*, Plaintiff was apparently able to safely encounter this alleged risk on numerous occasions.

[5] Claim One focuses solely on the "slip & fall" conditions of the shower and SHU cell. For this reason the court recommends dismissal of this claim. The court will, however, consider the factual

B. SHU Barbs (Claim Two)

In his second claim, Plaintiff alleges that his SHU cell had "dozens of jagged protruding welds [in] the shower and sink area." (Doc. 8 at 11). He states that he injured himself twice on the steel barbs, and required 15 stiches to his right knee after the second injury. *Id*. at 12. Plaintiff alleges that Defendants knew that cell was dangerous, but refused to remove the barbs or transfer Plaintiff to a safer cell. All of the Defendants, except Rangel and Robinson, move to dismiss this claim. (Doc. 40 at 17-25).

When viewed in isolation, the allegations regarding the steel barbs might not be sufficient to state an arguable Eighth Amendment claim. However, when viewed in combination with the allegations from Claim One (denial of shower shoes, mat, and curtain to prevent injury on a slippery cell floor), *Wilson*, 501 U.S. at 304, they tend to show that Plaintiff was subjected to a sufficiently serious living condition, which caused a substantial risk of harm to his health or safety. *See Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) ("[A] state must provide an inmate with shelter which does not cause his degeneration or threaten his mental and physical well being"). Nevertheless, Plaintiff's allegations must still establish personal participation and a sufficiently culpable mental state on the part of each Defendant.

### i.     *Defendants Cedeno, Humphries, Kasdon, Owens*

In the "Parties" section of his Complaint, Plaintiff lists Defendants Cedeno, Humphries, Kasdon, and Owens as having been "personally involved" in Claim Two. However, the body of the Complaint contains no allegations regarding the action, inactions, or subjective knowledge of any of these Defendants. An allegation that a defendant was "personally involved" in the violation of a constitutional right, without more, does not even constitute a threadbare recital of

---

allegations from Claim One in evaluating Plaintiff's second claim, which is also related to the shower area of his SHU cell. *See Wilson*, 501 U.S. at 304 (recognizing that several deprivations in combination may constitute a constitutional violation).

the elements and certainly cannot sustain a § 1983 claim. Therefore, the court recommends that Plaintiff's second claim be dismissed against Defendants Cedeno, Humphries, Kasdon, and Owens.

### ii.   Defendants Armijo, Camacho, Henry, McMullen

Plaintiff alleges that each of these Defendants was aware of the protruding steel barbs, and acknowledged that the barbs were dangerous. However, with respect to Defendants Armijo and Henry, there are no allegations that they had the authority to mitigate the risk by either fixing the barbs or by transferring Plaintiff to a different cell. (Doc. 8 at 15). Although Plaintiff alleges that Defendant Camacho could have transferred him to a "better" cell, Plaintiff further alleges that it was actually Defendants Fitzgerald and Gaconi who refused to have Plaintiff transferred. *Id*. at 15. Similarly, Plaintiff alleges that Defendant McMullen inquired about fixing the barbs, but was told not to do so by Plaintiff's "Unit Team." *Id*. at 14. And there are no allegations that Defendants Camacho and McMullen were free to do otherwise.[6] Consequently, the court concludes that Plaintiff has failed to allege personal participation on the part of any of these Defendants and recommends that this claim be dismissed against them.

### iii.   Defendants Atauvich, Berkebile, Heuett, Osagie, Padilla, Gaconi

Plaintiff alleges that each of these Defendants had the authority or the ability to fix the welds in Plaintiff's cell or have him transferred to a "safer" cell. The court, nevertheless, concludes that this claim should be dismissed because Plaintiff's allegations against them do not establish that these Defendants were aware of an excessive risk to Plaintiff's health or safety. *Farmer*, 511 U.S. at 837. ("[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

---

[6] Furthermore, there are no allegations that Defendant McMullen was aware of the slippery condition of Plaintiff's cell.

inference.").

Here, the Complaint alleges that Defendants Atauvich, Berekbile, Heuett, and Padilla knew of the sharp welds in the SHU cell. (Doc. 8 at 14-17). The Complaint does not, however, allege that any of these Defendants knew of the slippery conditions caused by Plaintiff's lack of a shower curtain, shower shoes, or a shower mat. *See id*. at 9-10. Similarly, Plaintiff alleges that Defendant Osagie knew of the conditions caused by Plaintiff's shower, *id*. at 9; however, there are no allegations that Defendant Osagie knew about the welds. *Id*. at 15. Consequently, the court cannot conclude that any of these Defendants were aware of the facts from which the inference could be drawn. *Farmer*, 511 U.S. at 837.

Plaintiff's only allegation with regard to Defendant Gaconi's knowledge is that he "knew about [the] light and the shower and welds." (Doc. 8 at 16). However, the court concludes that this allegation is too vague to establish that Defendant Gaconi knew of any excessive risk that these elements posed. Rather, this allegation is akin to a simple recitation of the elements and, consequently, the court cannot infer that Defendant Gaconi had a sufficiently culpable state of mind. Therefore, the court also recommends that this claim be dismissed as against Defendant Gaconi.

> *iv*.    ***Defendant Fitzgerald***

Defendant Fitzgerald's potential liability presents a more difficult question. In the Complaint, Plaintiff alleges that Defendant Fitzgerald knew of (1) the slippery cell conditions related to Plaintiff's shower, (2) the sharp welds, and (3) that Plaintiff had been "cut" by the welds. (Doc. at 9, 15). Defendant Fitzgerald argues that this claim should be dismissed because the allegations failed to establish that he knew the "cut" was serious. (Doc. 40 at 22). He argues that the allegations do not establish an excessive risk to safety because accidents can happen in

the best of circumstances. The court agrees that this statement, alone, would likely be insufficient to support the subjective element of an Eighth Amendment claim. However, according to the allegations, Defendant Fitzgerald also recognized that the cell was "dangerous." (Doc. 8 at 15). Taking this additional allegation as true, and construing it liberally, it can be inferred that Defendant Fitzgerald knew that Plaintiff's cell posed an excessive risk to his health or safety. Consequently, the court concludes that dismissal is inappropriate at this stage of the litigation.

### C. Pepper Spray (Claim Three)

In his third claim, Plaintiff alleges that he suffers from severe chronic asthma. He further alleges that on May 20, 2014, while he was housed in the SHU, three unknown Defendants gassed the prisoner in the cell next to Plaintiff with pepper spray and chemical gas. (Doc. 8 at 18). The gas allegedly entered Plaintiff's cell through an adjoining vent, causing him to wake up gagging and coughing. Plaintiff states that he coughed up blood for several hours and ultimately lost consciousness. *Id*. at 18-19. He contends that prison officials are required to remove asthmatic prisoners from the area when chemical gas is used in non-emergency situations. He asserts that, despite knowing of his asthma, the Defendants purposefully refused to relocate him in violation of the Eighth Amendment.[7]

The legal analysis for this claim does not neatly fall into any one category of Eighth Amendment cases. Rather, Plaintiff's allegations that the Defendants acted maliciously and sadistically seem to suggest an excessive force claim. However, his allegations regarding his asthma suggest a claim of deliberate indifference to a serious medical need. To the extent that Plaintiff intends to assert a claim of excessive force, the court concludes that it should be dismissed.

---

[7] Plaintiff has also alleged that Defendant Berkebile denied him access to medical care, even though he was coughing up blood. Defendant Berkebile has not moved to dismiss this claim. (Doc. 40 at 30).

The pivotal inquiry in an excessive force claim is whether the force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm. *DeSpain v. Uphoff,* 264 F.3d 965, 975 (10th Cir. 2001) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)); *see also Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (an excessive force claim under the Eighth Amendment "involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind").

Here, even "assum[ing] that the use of mace and pepper spray could constitute excessive force," *Fogarty v. Gallegos*, 523 F.3d 1147, 1161-62 (10th Cir. 2008), Plaintiff's allegations fail to state a claim for relief. The use of force is justified when there is a concern for the safety of the institution, the guards, and the inmates. *See Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993); *see also Whitley*, 475 U.S. at 320 (prison officials may use reasonable force in a good faith effort to "maintain or restore discipline"). Here, although he alleges that the pepper spray and gas were used in a non-emergent situation, it is clear that Plaintiff is speculating and actually has no information regarding the need, or lack thereof, to use pepper spray on Plaintiff's neighbor.[8] Plaintiff admits that he did not know why the guards were using the pepper spray. (Doc. 8 at 18 (stating "for whatever reasons (I think that inmate threw some small food item on an ADX/Alcatraz Prison Guard) . . . .").  Indeed, he states that he was sleeping at the time that the action commenced. *Id.* Consequently, the court concludes that Plaintiff's allegations — that the use of pepper spray was done maliciously and sadistically — are conclusory and do not establish that the use of the gas was excessive or that any of the Defendants acted with a

---

[8] The guards' apparent use of tactical gear would seem to suggest the contrary. (*See* Doc. 8 at 19 (alleging that the guards were wearing "Ninja black suits [with] black masks").

sufficiently culpable state of mind in the use of the pepper spray.

Turning to the claim of deliberate indifference, the court concludes that Plaintiff has failed to state a claim against all but one of the Defendants. Prison officials may be liable for an Eighth Amendment violation for "indifference . . . manifested . . . in their response to the prisoner's needs or by . . . intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

Like other claims under the Eighth Amendment, a claim for deliberate indifference involves both an objective and a subjective component. *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005). First, the prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata*, 427 F.3d at 751 (holding that even a physician's grossly negligent medical judgment is not subject to scrutiny if the prisoner's need for medical treatment was not obvious) (internal quotations and citation omitted). Furthermore, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan,* 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations and citation omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001) (citation omitted).

Second, under the subjective component, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison official's

culpable state of mind."   *Mata*, 427 F.3d at 751.   "Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain."   *Estelle*, 429 U.S. at 104 (internal quotation and citation omitted).   The Tenth Circuit recognizes two types of conduct constituting deliberate indifference. The first occurs when a medical professional fails to properly treat a serious medical condition. Under this type of deliberate indifference, an assertion of mere negligence or even medical malpractice does not give rise to a constitutional violation. *Perkins v. Kan. Dept. of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). Further, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. *Id.*

The second type of deliberate indifference occurs when a prison official prevents an inmate from receiving treatment or denies him access to medical personnel capable of providing treatment.   *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) (internal citations omitted).   A prison health official who serves "'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill the gatekeeper role.'"   *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211). The subjective standard requires a state of mind "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm."   *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837) (internal quotations and further citation omitted).   "'[A]n inadvertent failure to provide adequate medical care' does not rise to a constitutional violation."   *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Estelle,* 429 U.S. at 105–06).   The plaintiff must allege that defendants personally participated in the Eighth Amendment violation.   *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citing *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th

Cir. 1976)).   "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Self*, 439 F.3d at 1231 (internal quotations omitted).

### i.   *Defendants Armijo, Camacho, and Fitzgerald*

As with his other claims, in the "Parties" section of the Complaint, Plaintiff alleges that Defendants Armijo, Camacho, and Fitzgerald were involved in Claim Three. Specifically, with regard to Defendant Armijo, Plaintiff alleges that Armijo "was in charge of [the] ADX hole/SHU during Claims 1, 2 & 3 [and] knew about facts [and] circumstances giving rise and maliciously refused to remedy violating [Plaintiff's] 1st & 8th Amend[ment] rights." (Doc. 8 at 3). This, however, is a threadbare recital of the elements and does not state a plausible claim under the Eighth Amendment. *Iqbal*, 556 U.S. at 678 ("Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, there are no allegations regarding Defendants Camacho or Fitzgerald in this section; they are merely listed as having participated in Claim Three. And there are no allegations regarding any of these Defendants in the body of Plaintiff's third claim. Consequently, Claim Three should be dismissed against Defendants Armijo, Camacho, and Fitzgerald. *Nasious*, 492 F.3d at 1163 (a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her).

### ii.   *Defendants Cedeno, Humphries, Robinson, Gaconi, John Does*

Plaintiff alleges that all of the above-mentioned Defendants knew of his medical condition. (Doc. 8 at 21). However, he does not offer any supporting factual allegations that would make this statement anything other than the conclusory recitation of a necessary element. Although Plaintiff's asthma was apparently recorded in his BOP/ADX medical records, (Doc. 8

at 18), the court cannot infer that these Defendants, who were not apart of the ADX medical staff,[9] had any prior knowledge of Plaintiff's asthma. Without more, Plaintiff has failed to establish the subjective element of a deliberate indifference claim against these Defendants.[10]

### iii.    *Defendant Osagie*

With respect to Defendant Osagie, the subjective component of a deliberate indifference claim is a closer question. Plaintiff alleges that Defendant Osagie specifically told the other prison employees not to move Plaintiff while the gas and pepper spray were used. (Doc. 8 at 20). Although Claim Three does not contain any specific allegations that Defendant Osagie knew about Plaintiff's asthma, Plaintiff does allege that Defendant Osagie is an ADX physician's assistant. *Id*. at 5. The Complaint also alleges that Plaintiff saw Defendant Osagie in connection with other medical concerns *Id*. at 9 (shower-related fall), 23 (shoulder). Construing these allegations liberally, it can be inferred that Defendant Osagie had access to Plaintiff's medical records and, therefore, knew about his asthma. Thus, it is plausible that Defendant Osagie also knew about the risks that the pepper spray would cause if Plaintiff was not moved prior to deploying the gas. Although the allegations do not provide a great deal of detail with regard to deliberate indifference, the Court finds that dismissal of the claim against Defendant Osagie is inappropriate at this stage.

### D. Shoulder & Hand (Claim Four)

In Claim Four, Plaintiff alleges that he has been intentionally denied the necessary

---

[9] Defendants Cedeno, Humphries, and Robinson are alleged to be ADX counselors, Defendant Gaconi is allegedly a prison guard, and the John Does are merely listed as "prison employees". (Doc. 8 at 4-5).

[10] Further, Plaintiff's allegations regarding the nonfeasance of Defendants Cedeno, Humphries, and Robinson fail to establish personal participation. There are no allegations that any of these Defendants had the power to intervene or the authority to control the use of the pepper spray. And there are no allegations that the John Does had any authority to move Plaintiff at any point. Nor are there any allegations that the John Does prevented Plaintiff from getting medical attention after the pepper spray was used.

medical treatment for a chronic and painful shoulder condition. Specifically, he alleges that his right shoulder has atrophied and is visibly smaller than his left shoulder, and that he suffers from searing nerve pain that extends from his shoulder into his hand. (Doc. 8 at 22). Plaintiff further alleges that a June 2014 MRI revealed a cyst in his shoulder. *Id*. The medical exam also noted that a skin graft on Plaintiff's hand needed surgical replacement due to daily bleeding. *Id*.

### i.    *Defendants Camacho, Huddleston, Osagie, Lungren, Santini*

Plaintiff contends that these Defendants violated his Eighth Amendment rights by refusing to provide him with surgery on his shoulder and his hand. *Id*. at 23-24. In addition, Plaintiff alleges that Defendants Osagie and Lungren refused to issue an order that Plaintiff be handcuffed with his hands in front of his body. *Id*. at 23.

As a preliminary matter, the court finds that, according to the allegations, the June 2014 MRI report does not include a recommendation of shoulder surgery or shoulder replacement.[11] Rather, the report apparently states that the skin graft on Plaintiff's hand needed surgical replacement. However, even if surgery was required on Plaintiff's shoulder, as well as his hand, the allegations in the Complaint are, nevertheless, insufficient to support a claim against these Defendants. Plaintiff does not allege that any of these Defendants had the power to authorize or perform the shoulder surgery or the hand surgery. In fact, according to Plaintiff's own allegations, it was the John Does on the "Medical Committee" who refused to authorize these surgeries. *Id*. at 24. Accordingly, because Defendants Camacho, Huddleston, Osagie, Lungren, and Santini were not personally involved in denying Plaintiff with these medical treatments,

---

[11] The court recognizes that the Order dismissing the case in part (Doc. 14) states that shoulder surgery was recommended. However, this court respectfully disagrees with that assessment. A close reading of the allegations necessitates a different finding. Although the court will liberally construe Plaintiff's filings, it cannot "supply additional factual allegations to round out a plaintiff's complaint." *Whitney*, 113 F.3d at 1173-74. As currently alleged, there was no recommendation for shoulder surgery.

Plaintiff has not established a *prima facie* case pursuant to § 1983.[12]  The court recommends that Plaintiff's claims regarding his hand and shoulder surgeries be dismissed against these Defendants.

With respect to Defendant Osagie's and Lungren's alleged refusal to order "cuff-in-front," the court also finds that the allegations do not support an Eighth Amendment claim of deliberate indifference. Other than Plaintiff's own conclusory assertions regarding its necessity, there are no allegations to support a finding that a "cuff-in-front" order constituted a serious medical need. Apparently, neither the June 2014 MRI report, nor any other medical opinion recommended such an order. Moreover, Plaintiff has not included any allegations regarding how being handcuffed behind his back affected him. The court will not assume facts that have not been plead in the Complaint. *Whitney*, 113 F.3d at 1173-74. Therefore, the court also recommends that this claim be dismissed.

### ii.        John Doe Defendants

With respect to the 10 unnamed Defendants on the "Medical Committee," Plaintiff alleges that they — in "concert" with other Defendants — violated his rights by "maliciously refusing to approve irrefutably [and] obviously needed known needed medical treatment and medical surgery for [Plaintiff's] cysted [sic] shoulder and nerve-damaged arm . . ." (Doc. 8 at 24). These allegations, however, are merely conclusions of law couched as allegations of fact and, therefore, do not plausibly allege an Eighth Amendment violation. *Iqbal*, 556 U.S. at 678. Furthermore, these allegations do not offer any specifics regarding these John Does; Plaintiff simply lodges these allegations at them as a group. However, the federal pleading standards

---

[12] To the extent Plaintiff relies on these Defendants' alleged refusal to provide unspecified "medical services" or "health services" (Doc. 8 at 23), aside from surgery, the allegations are vague and do not support a *prima facie* case under the Eighth Amendment. There is no indication as to what these other services are or why they were necessary to eliminate an excessive risk to Plaintiff's health.

require Plaintiff to specify what each defendant did, when he or she did it, and how those specific actions harmed Plaintiff. *See Nasious*, 492 F.3d at 1163. Plaintiff's allegations against these John Does fall far short. Consequently, the court recommends that Plaintiff's claims against these John Does be dismissed.

E. Snitch Label (Claim Six)[13]

In his sixth claim for relief, Plaintiff alleges that Defendant Kasdon (on September 5, 2013 and January 10, 2014) and Defendant McMullen (several times including on February 25, 2014) called Plaintiff a "snitch" in a loud voice. (Doc. 8 at 26). He further alleges that — as a result of being labeled a "snitch" — he was injured by a feces-coated dart, thrown at him by another inmate, which resulted in blood loss and infection. *Id*. Plaintiff asserts that these Defendants deliberately exposed him to a risk of serious harm in violation of the Eighth Amendment.

In *Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001), the Tenth Circuit held that an inmate's allegations that he had been labeled a "snitch" was, by itself, sufficient to meet the standard for a violation of the Eighth Amendment because it demonstrated that the inmate was "incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 1271; *see also Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. 2008) ("[A]llegations of a prison officer's deliberate disclosure of dangerous information about an inmate's status are sufficient to state a claim under the Eighth Amendment provided the alleged danger is facially concrete and plausible enough to satisfy basic pleading standards."); *Northington v. Marin*, 102 F.3d 1564 (10th Cir. 1996) (labeling an inmate a "snitch" constitutes deliberate indifference to the safety of

---

[13] In his "Parties" section, Plaintiff again lists several Defendants (Berkebile, Cedeno, and Francia) as having been involved in Claim Six. However, he does not make any specific allegations against them in the body of his Complaint. Thus, for all of the reasons previously discussed, Claim Six should be dismissed as against Defendants Berkebile, Cedeno, and Francia.

that inmate).

### i.    *Defendants Kasdon and McMullen*

Defendants Kasdon and McMullen argue that this claim should be dismissed because Plaintiff has failed to allege that any other inmates heard their specific statements. (Doc. 40 at 36-37). The Defendants are correct insofar as the allegations regarding their individual statements are concerned; Plaintiff has not specifically alleged that these statements were made in front of other inmates. However, as Defendants correctly acknowledge, Plaintiff does allege that "ADX/Alcatraz staff [Defendants] maliciously falsely labeled [Plaintiff] loudly in direct sight [and] earshot of some of the most dangerous U.S. prisoners on U.S. soil . . . ." (Doc. 8 at 26). Construing, as it must, the complaint liberally and in the light most favorable to Plaintiff, the court concludes that this allegation is meant to be an overarching statement regarding the actions of each of the individual Defendants, with the specific statements laid out in the subsequent paragraphs. Although it is a close question, and Plaintiff may ultimately be unable to substantiate his allegations, the court concludes that Plaintiff's allegations are sufficient to state a claim against Defendants Kasdon and McMullen.

### ii.    *John Doe Defendants*

With respect to the John Does in Claim Six, the Complaint fails to make "allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *See Crosby v. Nelson*, No. 12-CV-01995-PAB-KLM, 2013 WL 4757258, at *6 (D. Colo. May 9, 2013) (quoting *Hartley v. Wilfert*, 931 F.Supp.2d 230, 232 (D.D.C. 2013)). Unlike the allegations regarding Defendants Kasdon and McMullen, Plaintiff has not provided any specific dates on which the John Does allegedly labeled him a snitch. Rather, he vaguely states that they did so "shortly before each assault." (Doc. 8 at 26). Furthermore, Plaintiff fails to distinguish between

these Defendants; he again, lumps them together without specifying what each Defendant said. Such allegations do not satisfy federal pleading standards; thus, these Defendants should also be dismissed. *Nasious*, 492 F.3d at 1163.

## IV.   First Amendment Retaliation

In his Complaint, Plaintiff alleges that all of the foregoing actions by the Defendants were done in retaliation for Plaintiff's lawsuits and grievances. (*See generally* Doc. 8). He seeks injunctive relief against the Defendants in their official capacities to prevent any further unlawful retaliation. Specifically, Plaintiff seeks injunctive relief requiring (1) that all in-cell showers be issued a shower curtain; (2) the removal of all sharp jagged welds from all post-construction repaired cells, and conformity with the Uniform Building Code; (3) that Plaintiff never be gassed again; (4) that he be provided with shoulder surgery; and (5) that he never be labeled a "snitch" again. Defendant United States seeks dismissal of Plaintiff's first three claims on the basis that Plaintiff lacks standing to seek the specific forms of relief. The court agrees.

"Absent a plaintiff with constitutional standing, federal courts lack jurisdiction." *The Wilderness Society v. Kane Cty., Utah*, 581 F.3d 1198, 1209 (10th Cir. 2009). Although "a plaintiff who has been constitutionally injured can bring a [*Bivens*] action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). "Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) (citing *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969)); *United Pub. Workers v. Mitchell,* 330 U.S. 75, 89–91,

(1947); *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, (1941); *Massachusetts v. Mellon,* 262 U.S. 447, 488 (1923)) (internal quotation marks omitted).

In *Lyons*, the Plaintiff brought suit pursuant to § 1983, alleging that the Los Angeles police officers had applied a dangerous "chokehold" to his neck in violation of the constitution. In addition to damages, the plaintiff sought an injunction preventing the police from using this tactic in similar situations. Although the Plaintiff had alleged actual harm — and could seek damages under § 1983 — the Court found that he could not "demonstrate a case or controversy with the City that would justify the equitable relief sought" because "standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Lyons*, 461 U.S. at 105; *see also Golden*, 394 U.S. at 109-10 (declaratory judgment action, seeking to invalidate state statute, dismissed on the grounds that the plaintiff's repeat exposure to the statute was remote and, therefore, the plaintiff lacked standing).

Here, Plaintiff's claims for injunctive relief are similarly problematic. Plaintiff first requests that all ADX in-cell shower cells be issued shower curtains. (Doc. 8 at 30). However, Plaintiff's allegations do not establish a reasonable likelihood that he will be deprived of a shower curtain in the future. Indeed, according to the allegations in his Complaint, Plaintiff was ultimately provided with a shower curtain. *See id*. 15.

Likewise, Plaintiff's request — that all sharp jagged welds be removed from post-construction ADX cells — should be dismissed. Plaintiff makes no allegations that it is reasonably certain he will be assigned to such a cell in the future. Instead, his allegations establish that Plaintiff's tenure in the offending cell was limited.[14] Thus, any threat of future

---

[14] He was apparently housed in SHU cell # 209 from April 1, 2014 – April 21, 2014 and May 13, 2014 – June 13, 2014. (Doc. 8 at 11).

injury is no more than conjectural. And for the same reasons, Plaintiff's demand that ADX comply with the Uniform Building Code should be dismissed. Plaintiff has not alleged how it is reasonably certain that he will be harmed by the prison's alleged failure to comply with the Code. Furthermore, Plaintiff has neither asserted a cause of action based on the prison's failure to comply with the Code, nor has he offered any allegations to support success on the merits of such a claim.

Finally, Plaintiff demands that he never be gassed at ADX again. However, Plaintiff has only alleged a single instance when he was affected by secondhand gas. (Doc. 8 at 18). There are no allegations of a threatened future injury that is both real and immediate. Consequently, he does not have standing to seek this form of equitable relief.[15]

## V. Federal Tort Claims Act

Plaintiff has also brought suit against the United States pursuant to the Federal Tort Claims Act ("FTCA") for claims of medical malpractice and civil conspiracy. (*See* Doc. 8 at 6). "The FTCA constitutes a limited waiver of the federal government's sovereign immunity from private suit." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). The FTCA allows the United States to be sued for claims arising out of negligent or wrongful acts or omissions of its employees, when such employees are acting within the scope of their duties. 28 U.S.C. § 1346(b)(1). Pursuant to the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

However, "the FTCA and a *Bivens* claim are alternative remedies." *Robbins v. Wilkie*, 300 F.3d 1208, 1213 (10th Cir. 2002). "When a federal law enforcement officer commits an

---

[15] For these articulated reasons, Plaintiff has also failed to state a claim for injunctive relief, which requires Plaintiff to show, among other things, irreparable harm unless the injunction is issued. *Crandall v. City & Cty. of Denver*, 594 F.3d 1231, 1236 (10th Cir. 2010).

intentional tort, the victim has two avenues of redress: (1) he may bring a *Bivens* claim against the individual officer based on the constitutional violation, or (2) he may bring a common law tort action against the United States pursuant to the FTCA." *Engle v. Mecke*, 24 F.3d 133, 135 (10th Cir. 1994) (citations omitted). Accordingly, a plaintiff can pursue a *Bivens* action against a federal official in his individual capacity and an FTCA claim against the United States arising out of the same subject matter, but a judgment against the United States under the FTCA precludes recovery against the federal employee under *Bivens*. *Id*. at 135. ("Although the plaintiff may elect initially to bring his action against either defendant, a judgment against the United States under the FTCA 'constitutes a complete bar to any action by the claimant, by reason of the same subject matter, against the employee . . . whose act or omission gave rise to the claim.'") (quoting 28 U.S.C. § 2676); *see also Trentadue*, 397 F.3d at 858-59 (concluding that district court was required to vacate the *Bivens* judgment where the court later entered judgment on FTCA claims arising out of the same subject matter, pursuant to § 2676).

To begin, Plaintiff has not alleged a separate claim for medical malpractice or conspiracy. Rather, he seems to suggest, in his "Nature of the Case" section, that the allegations underlying all of his *Bivens* claims equally support separate tort claims. (*See* Doc. 8 at 6). Even assuming, *arguendo*, that such a blanket statement is sufficient to allege a separate claim, Plaintiff has failed to comply with Colorado requirements for asserting a malpractice claim; consequently, any malpractice claim should be dismissed. *See Cestinik v. Fed. Bureau of Prisons*, 84 F. App'x 51, 54 (10th Cir. 2003) ("When a plaintiff brings suit against the United States under the FTCA, state substantive law applies."); *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1541 (10th Cir. 1996) (holding Colorado's requirement of a certificate of review to be a substantive, rather than procedural, rule of law); *see also Nielsen*, 17 F.3d at 1277 (*Pro se*

plaintiffs must "follow the same rules of procedure that govern other litigants.").

Colorado law provides:

> In every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint, counterclaim, or cross claim against such person unless the court determines that a longer period is necessary for good cause shown.

Colo. Rev. Stat. § 13-20-602(1)(a).  More specifically, when asserting a medical malpractice claim, the certificate of review "shall declare that the person consulted meets the requirements of [Colo. Rev. Stat.] § 13-64-401." *Id*. at §13-20-602(c). That provision, in turn, requires the witness to be "a licensed physician who is knowledgeable concerning the standard of care in the medical specialty of the defending physician." *Bilawsky v. Faseehudin*, 916 P.2d 586, 589 (Colo. App. 1995). Here, Plaintiff has not filed a certificate of review in compliance with Colo. Rev. Stat. § 13-20-602. Consequently, Colorado law, as applied to Plaintiff's claims through the FTCA, requires the dismissal of the malpractice claims.

The contours of Plaintiff's civil conspiracy claims are even less clear than his malpractice claims. Indeed, Plaintiff's only guiding allegation is his assertion that the BOP medical and administrative Defendants conspired with one another. (*See* Doc. 8 at 6 ("Conspiracies Medical and Administrative BOP Defendants")). Construing these allegations liberally, as it must, the court concludes that Plaintiff is attempting to assert a claim of conspiracy to commit medical malpractice. This is problematic for two reasons.

First, such claim is paradoxical at best. Under Colorado law, a claim of conspiracy requires a showing of intentional conduct. *See Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486, 502 (Colo. 1989) (The elements of a civil conspiracy are: "(1) two or more persons . . . ; (2) an object

to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.") (quoting *More v. Johnson,* 568 P.2d 437, 439–40 (Colo. 1977)); *see also Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1303 (Colo. Ct. App. 1998). A claim for medical malpractice is a particular type of negligence action. *Day v. Johnson*, 255 P.3d 1064, 1068 (Colo. 2011). Consequently, "there can hardly be conspiracy to commit negligence." *Sackman v. Liggett Grp., Inc.*, 965 F. Supp. 391, 395 (E.D.N.Y. 1997) (quoting *Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 396 (N.Y. Sup. Ct. 1994). *See also Sonnenreich v. Philip Morris Inc.,* 929 F.Supp. 416, 419 (S.D. Fla. 1996) (recognizing in the context of a lawsuit against tobacco manufacturers that "[l]ogic and case law dictate that conspiracy to commit negligence is a non sequitur"); *Rogers v. Furlow,* 699 F.Supp. 672, 675 (N.D. Ill 1988) ("What the plaintiffs suggest is a conspiracy to commit negligence, a paradox at best."); *Triplex Commc'ns, Inc. v. Riley,* 900 S.W.2d 716, 719 n. 2 (Tex. 1995) ("Given the requirement of specific intent, parties cannot engage in a civil conspiracy to be negligent.").

Second, even if such a claim were logically plausible, Plaintiff has failed to state a claim for medical malpractice and, therefore, he is prevented from maintaining a derivative cause of action for civil conspiracy with respect to his underlying tort claim. *See Vickery v. Evelyn V. Trumble Living Trust,* 277 P.3d 864, 871 (Colo. Ct. App. 2011) (if "the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself") (citation and quotation omitted).

To the extent that Plaintiff is attempting to pursue a different theory of civil conspiracy, it must also fail. Plaintiff has failed to demonstrate that he can pursue any civil conspiracy claim pursuant to the FTCA. As previously discussed, the United States is the only proper Defendant

30

with relation to a FTCA claim. "Under § 1346(b)'s general waiver of immunity, the United States is treated as a singular individual." *Bowling v. United States*, 740 F. Supp.2d 1240, 1250 (D. Kan. 2010) (discussion of civil conspiracy as it relates to Kansas law, which — like Colorado — contains a requirement that two or more persons be involved). Therefore, because the United States is a single person, it cannot accomplish "an agreement between two or more persons." *Id.* (explaining that "[t]he very nature of civil conspiracy requires a meeting of the minds between 'two or more persons' to perform an underlying tort"). Indeed, "it is impossible for such an 'individual' to engage in a civil conspiracy with itself." *Id.* (holding that because the United States cannot conspire with itself, it has not waived sovereign immunity with respect to conspiracy claims under the FTCA); *accord Cox v. United States*, 881 F.2d 893, 895 (10th Cir. 1989) ("[I]f a private person would be shielded from liability under the statute, the United States must also be shielded."). Consequently, the court recommends that Plaintiff's claims pursuant to the FTCA be dismissed.

## CONCLUSION

For the foregoing reasons, the court RECOMMENDS that Defendants Motion to Dismiss (Doc. 40) be GRANTED in part, and DENIED in part.

It is FURTHER RECOMMENDED that Plaintiff's Claim One be dismissed in its entirety.

It is FURTHER RECOMMENDED that Plaintiff's Claim Four seeking damages pursuant to *Bivens* be dismissed.

It is FURTHER RECOMMENDED that Plaintiff's medical malpractice and civil conspiracy claims, pursuant to the Federal Tort Claims Act, be dismissed.

It is FURTHER RECOMMENDED that Plaintiff's claims for injunctive relief be

dismissed as stated in the foregoing analysis.

It is FURTHER RECOMMENDED that Defendants Armijo, Atauvich, Camacho, Cedeno, Cordova, Francia, Gaconi, Henry, Heuett, Holman[16], Huddleston, Humphries, Lungren, Owens, Padilla, Santini, and the Unknown Defendants be dismissed from the action.

It is FURTHER RECOMMENDED that the Claim Two be permitted to proceed against Defendants Fitzgerald, Rangel, and Robinson.

It is FURTHER RECOMMENDED that Claim Three be permitted to proceed against Defendants Berekebile and Osagie.

It is FURTHER RECOMMENDED that Claim Six be permitted to proceed against Defendants Kasdon and McMullen.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. Once Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district court of the magistrate judge's proposed findings and recommendations and will result in waiver of the right to appeal from a

---

[16] Defendant Holman's personal involvement is limited to Claim One, which is recommended for complete dismissal.

judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve the issue for *de novo* review by the district court or appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 10th day of February, 2016.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge